IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BVE BRANDS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:20-CV-505-RP |
| DOES 1–82, *the individuals, entities, partnerships, and associations identified on Schedule A*, | § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Plaintiff BVE Brands, LLC's ("BVE") motion for preliminary injunction, (Dkt. 8), and its supplemental motion for preliminary injunction, (Dkt. 11). The former motion seeks to convert the temporary restraining order that the Court entered on May 14, 2020, (Order, Dkt. 4), and extended on May 29, 2020, (Order Dkt. 7), into a preliminary injunction with the same terms. (Mot. PI, Dkt. 8, at 2). The latter motion clarifies that the injunction should apply to all Defendants, including those whose contact information BVE only recently obtained. (Suppl. Mot. PI, Dkt. 11, at 1–2).

The Court held a hearing by telephone on BVE's motions on June 12, 2020. (*See* Minute Entry, Dkt. 14; Order, Dkt. 9 (setting hearing); Notice & Order, Dkt. 12 (updating hearing information)). Counsel for BVE appeared, but no Defendants appeared personally or via counsel. (Minute Entry, Dkt. 14, at 1). No Defendants have appeared or filed anything during the course of the litigation to date, despite being served. (*See* Notice of Serv., Dkt. 10; Notice of Serv., Dkt. 13; *see also* Order, Dkt. 4, at 21 (authorizing alternate service)).

The posture of this case has changed very little, if at all, from when the TRO was entered in this case. The relief for which BVE asks at this stage is almost identical to that which it requested, and was given, at the TRO stage. Accordingly, the Court finds good cause to convert the TRO into

1

a preliminary injunction, as BVE requests, given the similarity between the standards governing whether to issue a TRO and whether to issue a preliminary injunction. *See* Jackson Women's Health Org. v. Currier, 760 F.3d 448, 452 (5th Cir. 2014). The Court continues to find that BVE has demonstrated a likelihood of success on the merits, a threat of irreparable harm should the injunction not be issued, that the balance of hardships tips in its favor, and that the public interest would be appropriately served by an injunction, each for the same reasons detailed in the Court's TRO order. (*See* Order, Dkt. 4, at 3–10).

Accordingly, **IT IS ORDERED** that BVE's motion for preliminary injunction, (Dkt. 8), and its supplemental motion for preliminary injunction, (Dkt. 11), are **GRANTED**.

### A.  Preliminary Injunction

**IT IS ORDERED** that while this case is pending, Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them are enjoined and restrained from:

1. Using the BROCHETTE EXPRESS trademark or any reproduction, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine BROCHETTE EXPRESS product or not authorized by BVE to be sold in connection with the BROCHETTE EXPRESS trademark;

2. Passing off, including, or enabling others to sell or pass off any product as a genuine BROCHETTE EXPRESS product or any other product produced by BVE, that is not BVE's or not produced under the authorization, control, or supervision of BVE and approved by BVE for sale under the BROCHETTE EXPRESS trademark;

3. Committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products, including, without limitation, those identified in BVE's

complaint, (Dkt. 1), Schedule A, (Dkt. 1-1), and Exhibits 4–85 to the combined ex parte application, (Dkt. 3-2, 3-3, 3-4, 3-5, 3-6, 3-7, 3-8), are those sold under the authorization, control, or supervision of BVE, or are sponsored by, approved by, or otherwise connected with the BROCHETTE EXPRESS trademark or BVE;

4. Manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for BVE, nor authorized by BVE to be sold or offered for sale, and which bear the BROCHETTE EXPRESS trademark, or any reproductions, counterfeit copies, or colorable imitations thereof; and

5. Using, linking, transferring, selling, exercising control over, or otherwise owning or operating the infringing webstores, websites, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products.

**IT IS FURTHER ORDERED** that while this case is pending, Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them are enjoined and restrained from:

1. Moving or destroying, or otherwise disposing of any items, merchandise or documents relating to the Counterfeit Products, Defendants' infringing webstores and/or websites, and/or Defendants' assets and operations; and

2. Removing, destroying, or otherwise disposing of computer files, electronic files, business records, or documents relating to any of Defendants' infringing webstores, websites, assets, operations, or relating in any way to the manufacture, acquisition, purchase, distribution or sale of counterfeit products, or any reproduction, copy or colorable imitation of the BROCHETTE EXPRESS trademark.

**IT IS FURTHER ORDERED** that within **14 days** of receiving notice of this Order, Defendants shall serve upon BVE a written report under oath providing (a) their true names and physical addresses; (b) all websites and online marketplace accounts on any platform that they own and/or operate; (c) their financial accounts, including but not limited to all Amazon, eBay, Wish, DHGate, Ali Express, Alibaba, PayPal, Western Union, Payoneer, and/or Worldfirst accounts; and (d) the steps taken by Defendants to comply with the Court's orders listed above.

**IT IS FURTHER ORDERED** that this Order shall apply to the infringing webstores and websites and any other domain names properly brought to the Court's attention by sworn affidavit that verifies such new webstores or domain names are being used by Defendants for the purpose of counterfeiting the BROCHETTE EXPRESS trademark at issue in this action and/or unfairly competing with BVE.

## B.  Expedited Discovery Order

**IT IS ORDERED** that BVE may immediately commence discovery by providing actual notice of this Order, by subpoena or otherwise, to any of the following parties:

1. Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them;

2. Any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, Amazon, eBay, Wish, Ali Express, Alibaba, DHGate, PayPal, Western Union, Payoneer, Worldfirst, or other merchant account providers, payment providers, third party processors, or credit card associations that receive payments or hold assets on Defendants' behalf; and

3. Any third-party service providers, including, without limitation, Internet Service Providers (ISPs), back-end service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars, domain name registries, or

online third-party sellers who have provided services for Defendants (collectively, "Third Party Providers").

Within **five days** after receiving BVE's notice, the parties listed above shall provide copies of all documents and records in their possession or control relating to:

1. The identities and addresses of Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them and the location and identities of Defendants' operations, including, without limitation, identifying information associated with Defendants' infringing webstores, websites, and financial accounts;

2. The nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the infringing websites and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to the infringing websites;

3. Defendants' infringing webstores, websites, and any domain name registered by Defendants; and

4. Any financial accounts owned by or controlled by Defendants, including their agents, servants, employees, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, Amazon, eBay, Wish, Ali Express, Alibaba, DHGate, PayPal, Western Union, Payoneer, or Worldfirst, or other merchant account providers, payment providers, third party processors, and/or credit card associations that receive payments or hold assets on Defendants' behalf.

### C. Asset Freezing Order

**IT IS ORDERED** that Defendants and any person in active concert or participation with them who have actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by the Court.

**IT IS FURTHER ORDERED** that Amazon, eBay, Wish, DHGate, Alibaba, Ali Express, and their affiliates shall, within **two business days** of receipt of this Order, block any money transfers and funds from being transferred by Defendants, (*see* Sched. A, Dkt. 1-1), until further notice by the Court.

**IT IS FURTHER ORDERED** that PayPal, Payoneer, and Worldfirst (collectively, "Payment Processors"), shall, within **two business days** of receipt of this Order, for any Defendant or any Defendant's infringing websites, locate all accounts and funds connected to Defendants and the infringing websites, including, but not limited to, any Payment Processor accounts connected to the information listed in Schedule A, (Dkt. 1-1), and any email addresses provided for Defendants by third parties.[1]

**IT IS FINALLY ORDERED** that any banks, savings and loan associations, payment processors, or other financial institutions, for any Defendant or any of Defendants' infringing websites, shall, within **two business days** of receipt of this Order, locate all accounts and funds connected to Defendants and the infringing websites, including, but not limited to, any financial

---

[1] In its proposed order, BVE suggested that the Court order the Payment Processors to "[r]estrain and enjoin any such accounts or funds that are non-U.S. based from transferring or disposing of any money or other of Defendants' assets until further ordered by the Court." (Prop. Order, Dkt. 8-3, at 8). In its motion, BVE did not provide authority for the proposition that the Court can lawfully or effectively order that accounts and funds located outside the United States be frozen. (*See* Mot. PI, Dkt. 8). Should BVE wish to file an additional motion providing a basis for this relief, the Court will entertain it.

6

accounts connected to the information contained in Schedule A, (Dkt. 1-1), and any email addresses provided for Defendants by third parties.[2]

### D. Alternate Service Order

**IT IS ORDERED** that BVE may provide notice of these proceedings to Defendants and service of any documents filed in this case by sending an email to the email addresses provided for Defendants by third parties hosting their webstores, such as Amazon, eBay, Wish, DHGate, Ali Express and Alibaba. Providing notice through this alternative means, along with any notice that Defendants receive from webstore hosts and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them reasonable opportunity to present their objections in satisfaction of due process.

**SIGNED** on June 12, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[2] *See* note 1, *supra.*